BRUCE M. SPENCER
SMITH LAW FIRM, P.C.
Attorneys at Law
26 West Sixth Avenue
P. O. Box 1691
Helena, MT 59624
(406) 442-2980
bspencer@smithlawmt.com

ATTORNEYS FOR PLAINTIFF


UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
HELENA DIVISION

* * * * * * * *

| | | |
|---|---|---|
| GRIMES BUICK-GMC, INC., | ) | |
| | ) | NO. |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| -vs- | ) | |
| | ) | |
| GMAC, LLC, F/K/A GENERAL MOTORS | ) | |
| ACCEPTANCE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * *

Plaintiff, Grimes Buick-GMC, Inc. ("Grimes Buick" or "Plaintiff"), by its

attorneys, Bruce M. Spencer, Smith Law Firm, P.C., complaining of the defendant

GMAC LLC, formerly known as General Motors Acceptance Corporation ("GMAC"

or "Defendant"), alleges as follows:

- 1 -

## JURISDICTION AND VENUE

1.      This Court possesses jurisdiction over this action pursuant to (a) 28 USC 1332(a), by virtue of the diversity of citizenship between Plaintiff and Defendant and (b) and (b) pursuant to 28 U.S.C. Section 1331 because this Court has original jurisdiction of all civil actions arising under the laws of the United States (i.e., 15 U.S.C.A. 1221, et seq.).

2.      The matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

3.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a) because the Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

4.      This Court has supplemental jurisdiction over the pendent state law claims herein pursuant to 28 U.S.C. § 1367.

## PARTIES

5.      At all times hereinafter mentioned, Grimes Buick was and still is a domestic corporation duly organized under and existing by virtue of the laws of the State of Montana with its principal place of business located at 3401 Hwy. 12 E, Helena, MT 59601.

6.      At all relevant times, Grimes Buick was engaged in the business of operating an automobile dealership selling, among other things, General Motors automobiles.

7.      Upon information and belief, at all times hereinafter mentioned, defendant GMAC, LLC ("GMAC"), formerly known as General Motors Acceptance Corporation, was and still is a corporation duly organized and existing under the laws of the State of Delaware and duly authorized to conduct business in the State of Montana.

8.      Upon information and belief, GMAC is a financial services company that, among other things, provides commercial financing and factoring to General Motors' franchised retail motor vehicle dealerships.

9.      GMAC, which is engaged in, among other things, the automobile financing business, provides inventory financing to automobile dealers for the purpose of purchasing motor vehicles to hold in inventory, a commercial financing arrangement commonly referred to as "dealer floor plan financing."

10.     GMAC is the automotive finance arm of General Motors and, upon information and belief, in or around 2009, approximately 80% of General Motors' automobile dealers utilized GMAC for "dealer floor plan financing."

11.     Upon information and belief, during all relevant times, GMAC, formerly a wholly owned subsidiary of General Motors, was currently owned 49% by General Motors.

12.     Upon information and belief, during all relevant times, GMAC and General Motors had entered into a ten year agreement under which GMAC would support General Motor's automobile operations and provide General Motors and its dealers with a broad range of financial products.

13.     At all times mentioned herein, GMAC was under the control, or was the actual or apparent agent of General Motors.

RELEVANT FACTS

14.     Grimes Buick, pursuant to a dealer agreement with General Motors Corporation (the "Dealer Agreement"), was a duly franchised General Motors Buick and GMC dealer in Helena, Montana.

15.     Commencing in or around May 1990, Grimes and GMAC entered into one or more commercial finance agreements, pursuant to which GMAC would provide loans, wholesale financing or other credit accommodations to Grimes.

16.     Specifically, in or about May 4 1990, and in connection with its dealership business operations, Grimes Buick executed and delivered to GMAC, a certain wholesale security agreement and other related loan documents (the "Loan

- 4 -

Agreements"), pursuant to which GMAC provided Grimes Buick with a wholesale line of credit to finance its acquisition of new and used motor vehicles for sale to the consumer public (the "GMAC Floor Plan").

## WRONGFUL AND BAD FAITH CONDUCT OF DEFENDANT

17. Upon information and belief, GMAC, under the control of, or as the actual or apparent agent of, General Motors, and with the participation, assistance, aid, and agreement of General Motors, initiated and undertook a strategy of eliminating or streamlining the General Motors dealer network (i.e., reducing the number of automobile dealerships that sell General Motors automobiles).

18. Upon information and belief, at all relevant times, beginning, in or around the first quarter of 2009, GMAC, under the control of, or as the actual or apparent agent of, General Motors, and with the participation, assistance, aid, and agreement of General Motors, in bad faith, initiated and undertook a strategy of eliminating Grimes Buick as a General Motors dealer.

19. Specifically, beginning, in or around the first quarter of 2009,  GMAC:

a. lowered the amount of financing (flooring) to Grimes Buick based on the make and model of its inventory (i.e., moving from blue book value to black book value), causing a reduction in the amount of available working capital for dealer operations;

b.      shortened the curtailment time during which new and used car flooring had to be paid - i.e., shortened the time span in which dealers could keep inventory in stock before having to pay down the floored funds on both new and used inventory;

c.      implemented a 10% reduction for the amount floored on vehicles Grimes Buick acquired through GMAC auction; and

d.      refused to floor used vehicles without an actual lien release which could take as much as one to three weeks to obtain.

20.     The above wrongful actions of GMAC were devastating to the then working capital Grimes Buick and forced the dealership and its then principal to substantially infuse funds into the Plaintiff's business and increase its equity in both new and used inventory by hundreds of thousands of dollars.

21.     On or about April 9, 2009, Grimes Buick submitted an approximate $75,000 draft to GMAC that was returned as unpaid due to a small amount of insufficient funds on April 14, 2009.

22.     Upon information and belief, this was the first time in fifty (50) years that Grimes Buick had failed to promptly pay any of its lenders/finance companies the principal amount financed for certain motor vehicles that Grimes Buick had sold. Furthermore, a subsequent audit of Grimes Buick's inventory by GMAC demonstrated

that there were no other units sold out-of-trust and any units that had been sold had been paid for within the release period.

23.     The insufficient funds draft (the "One Time Insufficient Funds Draft") was rectified by Grimes Buick with a cleared payment to GMAC within approximately seventy two (72) hours.

24.     Commencing in April, however, and without due cause or justification, in bad faith, and in furtherance of the strategy and agreement to eliminate Grimes Buick as a General Motors' dealer, and in purported and feigned response to the One Time Insufficient Funds Draft, GMAC:

a.     required that Grimes Buick pay off any other vehicles sold during the Insufficient Funds Draft release period;

b.     reduced the number of new and used units that could be financed through the parties' credit line;

c.     required enhanced documentation for floored vehicles;

d.     reduced the release period on sold vehicles from three working days to the day of sale;

e.     rescinded the dealership's ability to transfer cash and vehicle payoffs via "Smart Cash" transactions and demanded that all sold units be paid by cashier's check;

f.      required that all April 2009 floor plan interest be due before the normal due date;

g.      increased Grimes Buick's floor plan interest rate by 3% - a nearly 70% increase;

h.      placed Grimes Buick's floor plan on suspension, which automatically threatened termination of the dealership by Honda and General Motors and further eliminated the dealership's ability to order inventory and floor plan late models trades - all of which further reduced the dealership's working capital;

i.      diverted dealership income from factory rebates and holdback accounts used to reduce the GMAC loan balance;

j.      demanded that Grimes establish a new checking account, from which GMAC would have sole access to withdraw funds, and that all cash from vehicle sales would be deposited in it;

k.      took physical possession of all vehicle titles and keys, even vehicles that were not financed through GMAC;

l.      caused General Motors to put parts on COD, making it more difficult for Grimes Buick to obtain customer repair parts;

m.      swept Grimes Buick's checking account on a daily basis to pay for additional expenses that GMAC incurred;

- 8 -

n.     implemented additional unnecessary and onerous financial requirements - the impact of which was to reduce Grimes Buick's ability to complete dealer-trades and sell new vehicles;

o.     implemented additional unnecessary and onerous financial requirements on trade-ins - the impact of which was to reduce Grimes Buick's ability to accept trade-ins and sell new vehicles;

p.     required Grimes Motors to pay GMAC approximately $27,000 in unnecessary and onerous 'keeper fees" for GMAC employees put on-site to control the dealership at a time when Grimes Buick not out of trust;

q.     charged Grimes Motors' onerous fees for unnecessary audits;

r.     demanded that GMAC take control of Grimes Buick's parts account;

s.     diverted Grimes Buicks' income from factory receivables, rebates, and dealer holdback accounts and applied these funds to wrongful additional curtailments and future interest purportedly due GMAC - thereby stripping the dealership of cash to operate and pay its bills;

t.     demanded $200,000 (then $100,000) in the form of a cashier's check be deposited into an "offset account" that only GMAC would have access to;

u.     caused General Motors to place the dealership's parts account on COD;

v.     required that Grimes Motors provide GMAC with a list of other financial institutions with whom Grimes Motors did business; and, upon information and belief, gave various banks and credit unions with whom Grimes Buick did business that Plaintiff was having financial difficulties and advised them of the One Time Insufficient Draft - thereby causing these banks and credit unions to cease doing business with Grimes Buick.

25.     Grimes Buick, faced with the prospect of the termination of the GMAC Floor Plan, was coerced by GMAC to capitulate to many, if not most, of the onerous and wrongful unilateral changes demand made by GMAC to the GMAC Floor Plan.

26.     Given the then economic climate in Spring of 2009, the GMAC Floor Plan, as it existed prior to the One Time Insufficient Draft, was critical to Grimes Buick's ability to remain in business as it provided Grimes Buick with financing necessary to obtain inventory of motor vehicles for sale and lease to the consumer public.

27.     The wrongful, unnecessary, bad faith and onerous actions of GMAC, purportedly in response to the One Time Insufficient Draft, effectively prohibited

Grimes Buick from acquiring any new or used automobile inventory for resale to the consumer public.

28.     Given the then current economic climate in the Spring of 2009, Grimes Buick could not maintain its operations with the wrongful, unnecessary, bad faith and onerous unilateral changes made by GMAC to the GMAC Floor Plan.

29.     The above bad faith actions on the part of the Defendant was tantamount to a constructive termination of Grimes Buick's franchise and dealer agreement with General Motors.

30.     The above actions of GMAC were in furtherance of the strategy and scheme to constructively terminate the Plaintiff's franchise and dealer agreement with General Motors and thereby reduce the General Motors dealer network.

31.     The above actions of the Defendant were in furtherance of a strategy and scheme to terminate Grimes Buick as a General Motors' dealer.

32.     The actions of Defendant caused the constructive termination of the Plaintiff's franchise and dealer agreement with General Motors and were prejudicial to the monetary interests and property rights of Grimes Buick.

33.     The actions of GMAC were violative of industry custom and practice.

34.     The actions of GMAC were not commercially reasonable given the then economic factors facing the national economy and particularly the automobile industry.

35.     In the Spring and Summer of 2009, GMAC was well aware of the fact that Grimes Buick would be forced or coerced to capitulate to many, if not most, of the onerous and wrongful unilateral changes demand made by GMAC to the GMAC Floor Plan as it would have been extremely difficult, if not impossible, for Grimes Buick to timely obtain an alternative dealer floor plan financing service.

36.     Upon information and belief, the basis upon which Defendant imposed most, if not all, of its unilateral changes to the GMAC Floor Plan, were intentionally fabricated (i.e., the One Time Insufficient Draft).

37.     Indeed, during an April 16, 2009 conference call between Mike Grimes, Chris Gadzia, Steve Hume (a GMAC Filed Representative) and Mark Kerr (a GMAC Manager), GMAC, through Mark Kerr, stated that he was aware that Grimes Buick was not "out of trust," had paid for every vehicle that had been sold by the dealership as well as all GMAC Floor Plan interest and an additional $4,000 representing the purported GMAC costs associated with two keepers that GMAC had placed at the dealership.

38.     The purported concerns relied upon by Defendant to impose its wrongful and onerous changes to the GMAC Floor Plan were not based upon any wrongful conduct on the part of Grimes Buick and were feigned.

39.     The unilateral, bad faith and wrongful changes to the GMAC Floor Plan imposed by GMAC in the Spring and Summer of 2009 caused Grimes Motor to suffer substantial losses, and shortly thereafter forced and/or coerced Plaintiff to sell its dealership in a distress sale at a price materially below the market value of such dealership given its sales history.

40.     Defendant has not acted in good faith and fair dealing in connection with the Loan Agreements.

41.     Defendant's bad faith conduct and wrongful acts as set forth above, were clearly prejudicial and contrary to Grimes Buick's economic interests.

42.     Defendant's bad faith conduct and wrongful acts as set forth above were meant to only, or primarily, benefit Defendant and work to the detriment of Grimes Buick.

43.     The bad faith actions of the Defendant resulted in significant and substantial damages sustained by Grimes Buick, including the destruction of its business.

44.     Upon information and belief, during the relevant time period, GMAC did not undertake similar actions with respect to other General Motors dealers who may have had a similar One Time Insufficient Draft.

45.     Upon information and belief, during the relevant time period, Defendant continued to provide floor plan financing, without imposing unilateral and harmful changes to the parties' floor plan arrangement, to numerous General Motors dealers that were (a) "out of trust" (b) suffering losses or (c) maintained insufficient cash to operate its business.

## FIRST CLAIM AS AGAINST DEFENDANT
### (Breach of Contract)

46.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

47.     Defendant's course of conduct constituted material and substantial breaches of the Loan Agreements.

48.     As a result of Defendant's conduct, Grimes Buick has sustained and will sustain substantial damages in an amount to be determined at the time of trial.

## SECOND CLAIM AS AGAINST DEFENDANT
(Breach of Good Faith and Fair Dealing)

49.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

50.     By reason of GMAC's contractual undertaking, in the Loan Agreements, to provide Grimes Buick with the floor plan financing, GMAC owed Grimes Buick the duties of good faith and fair dealing in connection with the parties' contractual relationship.

51.     In accordance with the aforesaid duties of good faith and fair dealing, GMAC was and is prohibited from undertaking any act which would have the effect of injuring or destroying Grimes Buick's rights deriving from its contractual relationship with GMAC under the Loan Agreements.

52.     GMAC, by acting dishonestly, in bad faith, and outside of commercial practices in its industry, breached the duties of good faith and fair dealing owed to Grimes Buick.

53.     Montana Code, Title 28, Chapter 1, Part 2, Section 28-1-211 provides that "[t]he conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

54.     GMAC, by the bad faith actions mentioned herein above, breached both the common law and statutory duties of good faith and fair dealing implied covenants contained in the Loan Agreements.

55.      As a result of the conduct of GMAC, Grimes Buick has sustained substantial damages in an amount to be determined at trial.

## THIRD CLAIM AS AGAINST DEFENDANT
(Violation of § 463(2)(d)(1) of the Montana Motor Vehicle Dealer Act)

56.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

57.     The Montana Code, Title 61, Motor Vehicles, Chapter 4 - Sales an Distribution of Motor Vehicles, Part 2, (the "Montana Motor Vehicle Dealer Act") provides statutory protections for motor vehicle franchisees in their dealings with motor vehicle franchisors.

58.     Grimes Buick is a "franchisee" within the meaning of the Montana Motor Vehicle Dealer Act.

59.     GMAC, under the control, or acting as the actual or apparent agent, of General Motors, and acting at all times herein with the participation, assistance, aid, and agreement of General Motors, was a "franchisor" within the meaning of the Montana Motor Vehicle Dealer Act.

60.    The Dealer Agreement between Grimes Buick and General Motors was a "Franchise" within the meaning of the Montana Motor Vehicle Dealer Act.

61.    The Montana Motor Vehicle Dealer Act, Section 61-4-25 provides that "Notwithstanding the terms, provisions, or conditions of any agreement or franchise, a franchisor may not cancel, terminate or refuse to continue a franchise unless the franchisor has cause for termination or non-continuance."

62.    The bad faith actions of GMAC in the Spring and Summer of 2009, and the basis relied upon by Defendant to unilaterally, wrongfully, onerous and in bad faith, change the terms of the parties' GMAC Floor Plan, were a pretext and in furtherance of Defendant (acting under the control, or as the actual or apparent agent, of General Motors) strategy of eliminating Grimes Buick as a General Motors dealer.

63.    Defendant's bad faith conduct and wrongful acts as set forth above, including, but not limited to, its actions in constructively terminating the Plaintiff's franchise through its unilateral, wrongful, onerous and bad faith changes to the terms of the parties' GMAC Floor Plan violate Section 61-4-25 of the Montana Motor Vehicle Dealer Act.

64.    Pursuant to Section 61-4-210(3) of the Montana Motor Vehicle Dealer Act, a new motor vehicle dealer that incurs pecuniary loss due to a violation of the Montana Motor Vehicle Dealer Act, by a manufacturer, or representative or agent of

- 17 -

a manufacturer, may recover damages in court in an amount equal to three times the pecuniary loss, together with costs including reasonable attorney fees.

65.    As a result of Defendant's violation of Section 61-4-25 of the Montana Motor Vehicle Dealer Act, Grimes Buick has sustained and will sustain substantial damages in an amount to be determined at trial.

## FOURTH CLAIM AS AGAINST DEFENDANT
(Violation of § Section 61-4-208(1)(c) of the Montana Motor Vehicle Dealer Act)

66.    Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

67.    The Montana Motor Vehicle Dealer Act Section 61-4-208(1)(c) provides, in relevant part that: "A manufacturer of new motor vehicles, a factory branch, a distributor, a distributor branch, an importer, a field representative, an officer, an agent, or any representative of the persons or entities listed may not: (c) impose unreasonable restrictions on the assertion of legal or equitable rights on the new motor vehicle dealer or transferee of a new motor vehicle dealer or franchise of a new motor vehicle dealer or transferee of a new motor vehicle dealer regarding transfer; sale; right to renew; termination; discipline; non-competition covenants; site control, whether by sublease, collateral pledge of lease, or otherwise; or compliance with subjective standards."

- 18 -

68.     The bad faith actions of Defendant, acting under the control, or as the actual or apparent agent, of General Motors, and with the participation, assistance, aid, and agreement of General Motors, caused Grimes Motor to suffer substantial losses and forced and/or coerced Plaintiff to sell its dealership in a distress sale at a price materially below the market value of such dealership given its sales history.

69.     Defendant's bad faith conduct and wrongful acts as set forth above, acting under the control, or as the actual or apparent agent, of General Motors,  violates Section 61-4-208(1)(c) of the Montana Motor Vehicle Dealer Act.

70.     Pursuant to Section 61-4-210(3) of the Montana Motor Vehicle Dealer Act, a new motor vehicle dealer that incurs pecuniary loss due to a violation of the Montana Motor Vehicle Dealer Act, by a manufacturer, or representative or agent of a manufacturer, may recover damages in court in an amount equal to three times the pecuniary loss, together with costs including reasonable attorney fees.

71.     As a result of Defendant's violation of Section 61-4-208(1)(c) of the Montana Motor Vehicle Dealer Act, Grimes Buick has sustained and will sustain substantial damages in an amount to be determined at trial.

**FIFTH  CLAIM AS AGAINST DEFENDANT**
(Violation of the Federal Automobile Dealer's
Day in Court Act - 15 U.S.C.A. § 1221)

72.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

73.     The federal Automobile Dealer's Day in Court Act (the "ADDCA", 15 U.S.C.A. §1221, et seq.) provides a dealer with a federal Claim against an automobile manufacturer who has failed to act in good faith regarding a franchise.

74.     Grimes Buick is an "automobile dealer" within the meaning of Section 1221(c) of the ADDCA.

75.     GMAC, acting under the control, or as the actual or apparent agent, of General Motors, was an "automobile manufacturer" within the meaning of Section 1221(a) of the ADDCA.

76.     The Dealer Agreement between Grimes Buick and General Motors was a "franchise" within the meaning of Section 1221(b) of the ADDCA.

77.     Defendant's bad faith conduct and wrongful acts as set forth above, violate 15 U.S.C. § 1221, et seq.

78.     As a result of defendants violation of 15 U.S.C. § 1221, et seq., Grimes Buick has sustained and will sustain substantial damages in an amount to be determined at trial.

SIXTH CLAIM AS AGAINST DEFENDANT
(Tortious Interference With Contract
and Prospective Contractual and Business Relations)

79.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

80.     At the time of the One Time Insufficient Draft, GMAC required that Grimes Motors provide it with a list of other financial institutions with which Grimes Motors did business.

81.     Upon so advising GMAC of the identity of the other financial institutions with whom Grimes Motors did business, GMAC, upon information and belief, gave these various banks and credit unions the impression that Plaintiff was having financial difficulties and advised them of the One Time Insufficient Draft - thereby causing these banks and credit unions to cease doing business with Grimes Buick.

82.     GMAC was fully aware that, by giving that, by giving the various banks and credit unions with whom Plaintiff did business, the impression that Plaintiff was having financial difficulties and advising them of the One Time Insufficient Draft, that such banks and credit unions would cease to do business with Grimes Buick.

83.     GMAC, by its conduct, deprived Grimes Buick of the ability to obtain the benefit of its franchise and forced and coerced Plaintiff to make a distress sale of its assets.

- 21 -

84.     The actions of GMAC constitute tortious interference with contract and the prospective contractual and business relationships of Grimes Buick with its various banks, lenders and credit unions, as well as with its customers, employees, other third parties and the consumer public causing Grimes Buick to suffer severe and continuing harm and damage.

85.     The actions of GMAC were accomplished by wrongful, dishonest, unfair and otherwise improper means.

86.     As a result of GMAC's conduct, Grimes Buick has sustained damages in an amount to be determined at trial.

## SEVENTH CLAIM AS AGAINST DEFENDANT
(Award of Attorney's Fees, Costs and Disbursements Against Defendant)

87.     Plaintiff repeats, reiterates and realleges each of the allegations contained above with the same force and effect as if more fully set forth herein at length.

88.     Pursuant to Section 61-4-210(3) of the Montana Motor Vehicle Dealer Act, a new motor vehicle dealer that incurs pecuniary loss due to a violation of the Montana Motor Vehicle Dealer Act, by a manufacturer, or representative or agent of a manufacturer, may recover, among other things, its costs including reasonable attorney fees.

89.     Grimes Buick has been aggrieved by defendants' violations of the Montana Motor Vehicle Dealer Act.

90.     Grimes Buick is entitled to an award, as against Defendant, of necessary costs and disbursements plus a reasonable attorney's fee.

91.     Grimes Buick has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the Montana Motor Vehicle Dealer Act,  all of which sums, as determined and allowed by the Court, Grimes Buick is entitled to judgment as against defendants.

WHEREFORE, PLAINTIFF respectfully demands judgment as follows:

a)     Damages on all Claims in an amount to be determined at trial;

b)      On the Seventh Claim for attorneys' fees, costs and expenses in connection with its enforcement of its rights under the Montana Motor Vehicle Dealer Act, all of which sums, as determined and allowed by the Court;

c)     For the legal fees, costs and disbursements incurred by the plaintiff in this action  in an amount to be determined after trial; and

d)     For such other and further relief as this Court may deem just and proper.

DATED this 13th day of August, 2012.

SMITH LAW FIRM, P.C.


BY:   /s/ Bruce M. Spencer____
        Bruce M. Spencer
        Attorney at Law

- 23 -

DEMAND FOR JURY TRIAL

Plaintiffs and each of them demand trial by jury of all issues triable as of right by jury.

DATED this 13th day of August, 2012.

SMITH LAW FIRM, P.C.


BY:   /s/ Bruce M. Spencer
      Bruce M. Spencer
      Attorney at Law