STEVE BLATT, ESQ., admitted Pro Hac Vice
Bellavia Gentile & Associates, LLP.
Attorneys for Plaintiff
200 Old Country Road, Suite 400
Mineola, New York 11501
(516) 873-3000
(516) 873-9032 Fax
ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA

HELENA DIVISION

------------------------------------------------------------------------X
GRIMES BUICK-GMC, INC.,

                                            Plaintiff,           Civil Action No. CV 12-73-H-CCL

                  v.

GMAC LLC,       F/K/A GENERAL MOTORS
ACCEPTANCE CORPORATION,

                              Defendant.

------------------------------------------------------------------------X

**PLAINTIFF'S ANSWER BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS.**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES

INTRODUCTION……………………………………………………………1

I.    Legal Argument In Opposition To Defendant's
      Motion To Dismiss ……………………………………………4

      A. Standard for Motion to Dismiss…………………………….3

      B. Grimes Buick states causes of action under Montana Dealer
         Franchise Statutes and the Federal Dealer Statutes………...6

      Grime's Claims Are Not Moot Due To Sale Of Dealership in
      This Type of Proceeding ………………………………………6

         1.  Plaintiff's Constructive Termination Claims Do Not
             Fail……………………………………………………7

         2.  GMAC Can Be Found Liable as it is an Agent of GM
             and is Controlled By GM ………………………..13

         3.  The Plaintiff's Claim that Defendant's Violated the
             Federal Automobile Dealers' Day In Court Act
             Is Not Time Barred ……………………………………15

      C. Grimes Buick's Tortious Interference Claim Does Not
         Fail…………………………………………………...19

         1.  The Claim Meets The Minimum Pleadings
             Standard……………………………………………..19

         2.  Grimes Buick's Claims Against the Defendant For Tortious
             Interference Are Not Time Barred ………………….21

         3.  Grimes Buick's Actions Can Support A Claim for Tortious

Interference ………………………………………………22

D. Grimes Buick's Actions Amount To A Breach Of Contract ………………………………………………………….24

1. Grimes Buick Has Sufficiently Plead A Breach Of The Covenant of Good Faith And Fair Dealing As A Matter Of Law …………………………………………...24

2. Grimes Buick Has Not Breached The Loan Agreement, And No Authority Exists for the Proposition that Defendant's Assert, That Grimes Buick is Precluded from Alleging A Cause of Action Against Ally for Breach of Contract …………………………………………………26

3. GMAC's Actions Are Actionable ………………………28

# TABLE OF AUTHORITIES

## CASES:

*Alvarez v. Chevron Corp.,* 656 F.3d 925, 930–31 (9th Cir. 2011) …………4, 6, 23

*American Motors Sales Corp. v. Semke,* 384 F.2d 192 (10th Cir. 1967) ………..11

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) …………………...6, 17, 27

*Barney Motor Sales v. Cal Sales, Inc.,* 178 F.Supp. 172 (D.C.Cal. 1959) ……….17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,556, 570,
127 S.Ct. 1955 (2007) ……………………………………………….......4, 27

*Bolz v. Myers*, 200 Mont. 286, 651 P.2d 606 (Mont. Oct. 12, 1982) …………….15

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
637 F.3d 1047 (9th Cir. 2011) …………………………………………………5, 27

*Cito v. Bridgewater TWP. Police Department*, 892 F 2d. 23 (3rd Cir. 1989) ……19

*Clegg v. Cult Awareness Network,* 18 F.3d 752 (9th Cir.1994)…………………4, 5

*Crest Cadillac Oldsmobile, Inc. v. General Motors Corporation,*
2005 WL 3591871 (N.D.N.Y. 2005) …………………………………………..9

*Darrick Enterprises, d/b/a Vineland Mitsubishi v. Mitsubishi Motors Corp.,*
*Mitsubishi of North America, Inc.,* 2007 WL 2893366, at 23-24
(D. N.J. Sept. 28, 2007) …………………………………………………..14

*EG, Longview Development LP v. Great Atlantic & Pacific Tea Company,*
*Inc.,* 2004 WL 1622032, at 4 (E.D. Pa. 2004) …………………………………16

*Ehrman v. Kaufman, Vidal, Hileman & Ramlow, PC*, 358 Mont. 519, 246 P.3d
1048 (2010) …………………………………………………………………15-16

*Empire Volkswagen Inc. v. Worldwide Volkswagen Corp.,*

627 F. Supp. 1202 (S.D.N.Y. 1986) …………………………………………...15

*Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227 (1962) …………………………6, 17

*Fulton Nat. Bank v. Willis Denney Ford, Inc.,* 154 Ga. App. 846, 269 S.E. 2d 916 (1980) …………………………………………………………………………….25

*Imperial Motors Inc. v. Chrysler Corporation,* 559 F. Supp. 1312 (D.C. Mass. 1983) …………………………………………………………………………8

*Kennedy v. Dawson,* 296 Mont. 430, 989 P. 2d 390 (Mont. Nov 2, 1999) ………24

*Kernaghan v. American Tower Corp.,* 09-4371, 2010 WL 3522133, at 4 (E.D. Pa. 2010) …………………………………………………………16

*Knucklehead Land Company, Inc. v. Accutitle, Inc.,* 172 P.3d 116, 340 Mont. 62 (Mont. Nov 20, 2007) …………………………………………24

*Kortum-Managhan v. Herbergers NBGL,* 349 Mont. 475, 204 P.3d 693 (Mont. Mar. 17, 2009)…………………………………………………………26

*Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) ……………………………………6

*Maloney v. Home and Investment Center, Inc.,* 298 Mont. 213, 994 P. 2d 1124 (Mont. Feb. 8, 2000) …………………………………………………………21

*Mangum v. Action Collection Service, Inc.,* 535 F.3d 935 (9th Cir. 2009) ……….11

*Pelton v. Markegard,* 179 Mont. 102, 586 P.2d 306 (Mont. Nov. 6, 1978) ……...15

*Phelps v. Frampton,* 339 Mont. 330, 170 P.3d 474 (Mont. Oct. 22, 2007) ………26

*Phillips v. Montana Education Association,* 187 Mont. 419, 610 P.2d 154 (Mont. Apr. 8, 1980)……………………………………………20

*Petereit v. S.B. Thomas, Inc., 63 F.3d 1169 (2nd Cir. 1995)* …………………9-10

*Rea v. Ford Motor Co.,* 355 F. Supp. 842 (W.D. Pa. 1973) …………………..16

4

*Rea v. Ford Motor Co.,* 497 F.2d 577 (3rd Cir. 1974) ………………………16-17

*Robert Basil Motors, Inc. v. General Motors Corporation,*
2004 WL 1125164 (W.D.N.Y. 2004)…………………………………………………9, 10

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir.1984) …………..4

*Robinson v. Johnson,* 313 F. 3d. 128 (3rd Cir. 2002) ……………………………..19

*Shamrock Motors, Inc. v. Chrysler Corp.,* 293 Mont. 317, 974 P. 2d
1154 (Mont. Mar. 2, 1992)………………………………………………………………7

*Shamrock Motors, Inc. v. Ford Motor Company, Inc.,* 293 Mont. 188, P. 2d
1150 (Mont. Mar. 11, 1999) ……………………………………………………………7

*State Medical Oxygen & Supply, Inc., v. American Medical Oxygen Company,*
267 Mont. 340, 883 P.2d 1241 (Mont. Oct. 25, 1994) ………………….............22

*Story v. City of Bozeman,* 424 Mont. 436, 791 P2d 767 (1990)...............................24

*Taylor v. Anaconda Federal Credit Union,* 170 Mont. 51, 550 P.2d
151 (Mont. May 20, 1976) ……………………………………………………………15

*Telesaurus VPC, LLC v. Power,* 623 F.3d 998 (9th Cir. 2010) …………….5, 23, 24

*TLMS Motor Corp. v. Toyota Motor Distributors, Inc.,* 912 F.Supp.
329 (N.D. Ill. E. Div. 1995) ……………………………………………………………14

*Turnpike Ford, Inc. v. Ford Motor Company and Ford Motor
Credit Company,* 415 F. Supp 2d 666 (S.D. W. Va. 2006) ………………………14

*Walstadt v. Norwest Bank of Great Falls,* 240 Mont. 322,
783 P. 2d 1325 (Mont. Dec. 20, 1989)……………………………………………..22-23

*Woodard v. General Motors Corporation,* 298 F. 2d 181 (5th Cir. 1962)………..15

## FEDERAL STATUTES AND FEDERAL RULES

15 U.S.C. 1222, 1221………………………………………………12, 13, 15

15 U.S.C. 1221(a) ……………………………………………13, 14, 15

FRCP Rule 8(a)(2) …………………………………………………..5

FRCP Rule 12 …………………………………………………………5

FRCP Rule 12(b)(6) ……………………………………………4, 5

## <u>STATE STATUTES, RULES OF PROCEDURE AND COURT RULES</u>

Montana Code Annotated ("MCA") MCA 28-1-211 ……………………………25

MCA 61-4-205, 208 …………………………………………………8, 10, 11

Local Rules of Procedure, United States District Court,
District of Montana, Rule 15.1………………………………………………22

Montana Rules of Civil Procedure, Rule 15(a) …………………………….22

## I.   INTRODUCTION

Grimes Buick was a duly franchised General Motors Buick and GMC dealer in Helena, Montana, engaged in the business of operating as an automobile dealership.

Defendant GMAC, LLC ("GMAC"), f/k/a General Motors Acceptance Corporation ("General Motors" or "GM") is a financial services company, and an automotive finance arm of General Motors, that provides commercial financing to General Motors franchised retail motor vehicle dealerships, including inventory financing to automobile dealers for the purpose of purchasing motor vehicles to hold in inventory, commonly called "dealer floor plan financing".

Around May 1990, Grimes and GMAC entered into one or more commercial finance agreements, pursuant to which GMAC would provide loans, wholesale financing or other credit accommodations to Grimes, and executed a wholesale security agreement and other related loan documents (the "Loan Agreements"), pursuant to which GMAC provided Grimes Buick with a wholesale line of credit to

finance its acquisition of new and used motor vehicles for sale  ("GMAC Floor Plan").

On or about April 9, 2009, Grimes Buick submitted an approximate $75,000 draft to GMAC that was returned as unpaid due to a small amount of insufficient funds on April 14, 2009 - the first time in fifty (50) years that Grimes Buick failed to promptly pay any of its lenders/finance companies the principal amount financed for motor vehicles that Grimes Buick sold. Grimes Buick rectified this error by submitting a cleared payment to GMAC within approximately seventy two (72) hours.

Notwithstanding the rectification by Plaintiff and its history of a good and sound commercial and business relationship with GMAC, in April, GMAC, under the control of, or as the actual or apparent agent of, General Motors, in bad faith, and in furtherance of what Plaintiff alleges to be part of a strategy to eliminate Grimes Buick as a General Motors dealer, used the insufficient funds draft as a basis to impose a number of restrictions which are set forth in the Complaint. See Plaintiff's Complaint, ¶¶ 19 a-c, 24 a-v.

Grimes Buick, faced with the prospect of the termination of the GMAC Floor Plan, was coerced to capitulate to the onerous unilateral changes demanded by GMAC to the GMAC Floor Plan which was critical to Grimes Buick's ability to

remain in business as it provided Grimes Buick with financing necessary to obtain its inventory.

Plaintiff's Complaint alleges that GMAC was well aware of the fact that Grimes Buick would be forced or coerced to capitulate the demands made by GMAC to GMAC Floor Plan as it would have been extremely difficult, if not impossible, for Grimes Buick to otherwise obtain an alternative dealer floor plan financing service in a timely manner, and that the unilateral changes to the GMAC Floor Plan, were intentionally fabricated.

GMAC misled Grimes Buick into believing that Grimes Buick would continue to receive financing and was on good terms with GMAC and GM. Thus, Grimes Buick did not discover until later, after the culmination of all the actions and event occurred that GMAC and GM were implementing a scheme to constructively terminate the Grimes Buick dealership franchise.

During an April 16, 2009 conference call between Grimes Buick and representatives from GMAC, GMAC's representatives stated that Grimes Buick was not "out of trust," and had paid for every vehicle that had been sold by the dealership as well as all GMAC Floor Plan interest including an additional $4,000 representing the purported GMAC costs associated with two keepers that GMAC had placed at the dealership.

9

Grimes Buick discovered later that GMAC continued to provide floor plan financing to numerous General Motors dealers that were (a) "out of trust" (b) suffering losses or (c) maintained insufficient cash to operate their business.

Grimes Buick claims that the actions of GMAC caused the constructive termination of the its franchise and dealer agreement with General Motors which led to the distress sale of Grimes Buick dealership in September 2009.

Grimes Buick commenced this action in August 2012 by filing and service of its Summons and Complaint against the GMAC.

## LEGAL ARGUMENT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### A. Standard for Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984) (*citation omitted*). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

555,556, 570, 127 S.Ct. 1955 (2007). Under FRCP Rule 12, the primary issue herein is whether Plaintiff's Complaint gives Defendant fair notice of their claims, and allows Plaintiff to explore these claims during discovery, and not whether Plaintiff will ultimately prevail. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. at 1969.

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. *See Twombly*, 550 U.S. at 570.

Although Court's have discarded the hyper-technical, code-pleading regime which allowed a plaintiff to go forward with nothing more than conclusions, a complaint that states a plausible claim for relief shall survive a motion to dismiss. *See See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Federal Rules of Civil Procedure, FRCP, Rule 8(a)(2). When there are well-pleaded factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Ashcroft,* 556 U.S. at 678–79, 129 S.Ct. at 1949–50; *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054–55 (9th Cir. 2011). For a pleading to state a claim that is plausible on its face, it requires a reasonable inference that a defendant is liable for the misconduct alleged. *See Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010); *Ashcroft v. Iqbal,* 556

11

U.S. 662, 129 S.Ct. 1937; *Alvarez v. Chevron Corp.,* 656 F.3d 925, 930–31 (9th Cir. 2011) (*quoting Telesaurus* ).

Although Grimes Buick's Complaint meets the above requirements, Grimes Buick alternatively requests, in the event that the Court decides to grant the motion to dismiss, that it be granted leave to amend the Complaint. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227 (1962); *Telesaurus,* 623 F.3d at 1003; *Alvarez,* 656 F.3d at 935. When a Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (*citations omitted*).

**B. <u>Grimes Buick states causes of action under both Montana Dealer Franchise Statutes and the Federal Dealer Statutes.</u>**

<u>**Grimes Buick's Claims Are Not Moot Due To Sale Of Dealership.**</u>

Plaintiff does not dispute that on or about September 15, 2009 Plaintiff sold its dealership.   Both of the *Shamrock* cases, involved a situation where the dealer was seeking to be reinstated following a termination by the franchisor.    In Montana, as in all states, before a dealer franchise may be terminated the dealer is entitled to notice and an opportunity for an administrative hearing. MCA 61-4-206. The Montana Supreme Court held that one case was moot due to a failure to seek a stay of the termination during the pendency of the appeal.  The Montana Supreme

Court found moot objections against termination of the franchise in the other case where the dealer sold the dealership and resigned from the franchise while the case was pending.  *See Shamrock Motors, Inc., v. Chrysler Corp.,* 293 Mont. 317, 320-321; *Shamrock Motors Inc., v. Ford Motor Company,* 293 Mont. 188, 191-192, 194.

Grimes Buick does not seek to be reinstated after a franchisor's termination. Instead, Grimes Buick seeks damages from GMAC's wrongful conduct. Grimes Buick alleges that GMAC's unilateral imposition of a number of onerous restrictions upon Grimes Buick effectively amounted to a constructive termination of the Grimes Buick's franchise and Dealer Agreement that Grimes Buick held with General Motors, and which resulted in the ultimate destruction of its business. Grimes Buick alleges that Defendant violated state and federal law, and alleges breach of contract, breach of the implied covenant of good faith and fair dealing and allege tortuous interference with contract and prospective contractual and business relations. See Plaintiff's Complaint, ¶¶ 24 a-v, 28-32, 43, 46-85.

### 1.  <u>Plaintiff's Constructive Termination Claims Do Not Fail</u>

Grimes Buick is a "franchisee" under the Montana Motor Vehicle Dealer Act. MCA § 61-4-201 (7) and is protected by the statute with respect to its dealings with motor vehicle franchisors and their agents, such as GMAC. MCA § 61-4-208.

The Montana Motor Vehicle Dealer Act, MCA § 61-4-205 provides that "Notwithstanding the terms, provisions, or conditions of any agreement or franchise, a franchisor may not cancel, terminate or refuse to continue a franchise unless the franchisor has cause for termination or noncontinuance." Notwithstanding the silence of the Montana statute, regarding whether constructive termination is actionable, the body of common law on constructive termination provides for a cause of action by Plaintiff.

Case law that recognizes constructive termination as a basis for a violation of the Motor Vehicle Dealers Acts if it is the result of actions taken by a manufacturer with the intent to intimidate, threaten or coerce. *See Imperial Motors Inc. v. Chrysler Corporation,* 559 F. Supp. 1312, 1315 (U.S. Dist. Ct., D. Mass. March 25, 1983) (Court denied Defendant's motion (on summary judgment) to dismiss on the basis that plaintiff's allegation that the line of credit for floor plan models was significantly reduced to intimidate Plaintiff, breached a duty under the State statute which defined good faith as the duty of each party to act in a fair and equitable manor so as to guarantee any party freedom from coercion, intimidation or threats of coercion). *See American Motors Sales Corp. v. Semke*, 384 F.2d 192 (10th Cir. 1967).

The relevant inquiry, which Defendant has failed to address, is whether the alleged actions, which must be taken as true for the purposes of this motion, resulted in a *substantial decline* in Plaintiff's net income.  *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169 (2nd Cir. 1995); *Crest Cadillac Oldsmobile, Inc. v. General Motors Corporation,* 2005 WL 3591871 (N.D.N.Y. 2005) (plaintiff automobile dealer alleged "constructive termination" claim under Section 463 of the New York Dealer Act by alleging that defendant manufacturer's conduct, among other things, "destroyed the value and transferability of plaintiff's Oldsmobile franchise"). Based upon the above law, it is respectfully submitted that the Complaint sufficiently alleges a constructive termination, in violation of the relevant Montana statute, of Plaintiff's franchise and its dealer agreement after Defendant's actions resulted in a substantial decline in Plaintiff's net income.

Defendant's argument states a formalistic view and a narrow statutory interpretation of the Montana statute. Indeed, similar arguments with respect to other franchise motor vehicle statutes have been rejected.  In *Robert Basil Motors, Inc. v. General Motors Corporation,* 2004 WL 1125164 (W.D.N.Y. 2004), the Court cited favorably to the Second Circuit's decision in *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169 (2nd Cir. 1995) and rejected the theory that a formal termination was needed to state such a constructive termination under the state statute.

15

The *Robert Basil Motors* Court agreed with the Second Circuit's analysis in *Petereit,* holding that "[g]iven the remedial nature of the New York Dealer Act, the statute would easily be circumvented if the service of a formal notice of termination were required to implicate the statute's protections." *Robert Basil Motors* at 4.  There is no difference in the instant proceeding with respect to the proper application of the Montana motor vehicle franchise act.

Among the prohibited acts under the Montana Code, a manufacturer … [or a manufacturer's] [sic] agent, … may not: (a) coerce, attempt to coerce or require a new motor vehicle dealer or transferee of a new motor vehicle dealer to (iii) change location of the dealership or due any other act unfair to the new motor vehicle dealer by threatening to cancel an existing franchise or threatening to withhold, delay or disrupt the receipt of new motor vehicles or any motor vehicle parts or supplies. MCA 61-4-208 (1) (a) (iii), (vii) (A), (B), and (c).

Here it is alleged that GMAC significantly reduced Grimes Buick's floor plan financing agreement and imposed significant restrictions that effected Grimes Buick's ability to operate.  See Plaintiff's Complaint, ¶ 24 a-v. Grimes Buick specifically alleges that the bad faith actions of GMAC acting as agent of General Motors were part of a strategy to force or coerce Grimes Buick to cease operation of its business and to eliminate Grimes Buick as a General Motors dealer. See

16

Complaint, Docket No. 1. Grimes Buick alleges that, as part of strategy to reduce the General Motors dealer network, its business was targeted for elimination and GMAC began a course of conduct which included lowering the amount of floor plan financing based on the make and model of Grimes Buick's inventory which had the immediate effect of reducing the available working capital for the dealership's operations. GMAC also shortened the time span in which Plaintiff could keep inventory in stock before having to pay down the funds on both new and used inventory, and implemented a 10 percent rate for the amount floored on vehicles Grimes Buick acquired through GMAC auction; and required an actual lien release on used vehicles which took as much as one to three weeks to obtain.

Grimes Buick alleges that the aforementioned actions by GMAC thereby effectively stripped it of the necessary cash needed to operate its dealership and pay its bills. See Plaintiff's Complaint, ¶ 24 a-v; 15 U.S.C. 1222, 1221; MCA § 61-4-205 (1).

These Activities put a financial strain on Grimes Buick's dealership and Grimes Buick could not maintain its operations, which Plaintiff claims, is tantamount to a constructive termination of Grimes Buick's franchise and dealer agreement with General Motors. The Complaint contains plausible allegations that demonstrate GMAC violated the provisions under the MMDVA and is under the

control of, or acts as an agent of, General Motors. A Claim for constructive

termination has been made the GMAC's motion to dismiss should be denied.

## 2. <u>GMAC Can Be Found Liable as it is an Agent of GM and is Controlled By GM.</u>

Defendant argues that Ally is not a manufacturer of automobiles as defined

under 15 U.S.C. 1221(a), and that Ally must be under the control of General

Motors in order to impose liability.  However, it is undisputed that Ally was

formerly known as GMAC and that GMAC is owned by General Motors.

Defendant does not deny that GMAC, now Ally, was formerly a wholly owned

subsidiary of General Motors and was owned 49% by General Motors, and does

not deny that General Motors and GMAC had a ten (10) year agreement under

which GMAC would support General Motors automobile operations and provide

General Motors and its dealer with a broad range of financial products, to facilitate

the sale of automobiles.  Thus, whether the name of the company is now Ally is

irrelevant to this proceeding.

Bad faith acts are prohibited under the FADDCA and under the Montana

Code and in addition to imposing liability against the manufacturer for violations

of the statute, the manufacturer's agent can also face liability. *See* 15 U.S.C. 1221

(a), 1222; MCA 61-4-208 (1) (a) (iii), (vii) (A), (B) ; MCA § 61-4-210.

Furthermore, the fact that Ally as an agent or under the control of, and with the

support of, the manufacturer, GM, failed to act in good faith toward Plaintiff in performing its agreements and threatened and coerced the dealership, as set forth in the Complaint, is sufficiently alleged to state a claim for a violation of both State and federal law even if Ally was not a party to the franchise agreement.  *See Darrick Enterprises, d/b/a Vineland Mitsubishi v. Mitsubishi Motors Corp., Mitsubishi of North America, Inc.,* 2007 WL 2893366, at 23-24 (D. N.J. Sept. 28, 2007); *Turnpike Ford, Inc. v. Ford Motor Company and Ford Motor Credit Company,* 415 F. Supp 2d 666 (S.D. W. Va. 2006); *TLMS Motor Corp. v. Toyota Motor Distributors, Inc.,* 912 F.Supp. 329, 333-334 (N.D. Ill. E. Div. 1995).

Defendant's motion is not seeking summary judgment, and is a motion to dismiss, and Defendant's motion should be denied on the basis that Plaintiff's Complaint sets forth plausible allegations that GMAC [Ally] as an agent acted on behalf of, and with ratification by, General Motors, in seeking to constructively terminate the Plaintiff's dealership franchise.   The statute was passed to prevent a manufacturer, like General Motors, to have the ability to commit unlawful conduct in violation of the Act(s) under State and federal law, by either having an agent or another entity under their control make unlawful demands and force dealerships to adhere to unfair and inequitable requirements, such as those set forth in Plaintiff's Complaint.  *Woodard v. General Motors Corporation,* 298 F. 2d 181, 127 (5th Cir.

1962); *Empire Volkswagen Inc. v. Worldwide Volkswagen Corp.,* 627 F. Supp.

1202 (S.D.N.Y. 1986).

Given GMAC's conduct in using a purported financial default as a mere

pretext to impose restrictions in a strategic effort to drive Plaintiff out of business,

GMAC's agency relationship with GM, Plaintiff has sufficiently pled a cause of

action under the statute given that the statute extends liability beyond

manufacturers to financing subsidiaries such as GMAC.  15 U.S.C. 1221 (a); MCA

61-4-205, 208.

### 3. <u>The Plaintiff's Claim that Defendant's Violated the Federal Automobile Dealers' Day In Court Act Is Not Time Barred</u>

Under the discovery rule, the statute of limitations does not accrue until the

dealer knows of the claim, and Grimes Buick's Complaint establishes a continuous

course of conduct by GMAC that resulted in Grimes Buick's ultimate though not

immediate awareness that GMAC was not acting lawfully and that Grimes Buick

had a legal claim under the statute.

Likewise the accrual rule states that all elements of a claim must have

accrued in order to start the limitations period running.  *See, Ehrman v. Kaufman,*

*Vidal, Hileman & Ramlow, PC*, 358 Mont. 519, 246 P.3d 1048 (2010).  Grimes

Buick did not know the extent of its damages until after the sale of its franchise in

September, 2009.  Thus, none of the statutory limitations periods started running until September 2009.   *Eherman*, *supra*.

"Where the statutory period has expired the discovery rule triggers the tolling of the statute of limitations when the Plaintiff is unable, despite the exercise of reasonable diligence, to discover the injury or its cause". *Kernaghan v. American Tower Corp.,* 09-4371, 2010 WL 3522133, at 4 (E.D. Pa September 8, 2010).  In the instant proceeding, Plaintiff sold its business in September 2009 and Defendant's motion even concedes that the action was brought *nearly* [emphasis added] three (3) years after the September 2009 sale. Construing the facts in the light most favorable to Plaintiff and particularly considering the early stages of the proceeding, Grimes Buick's allegations are sufficient to survive a motion to dismiss on the basis of the statute of limitations.  *See, EG, Longview Development LP v. Great Atlantic & Pacific Tea Company, Inc.,* 2004 WL 1622032, at 4 (E.D. Pa. 2004);  *Rea v. Ford Motor Co.*, 355 F. Supp. 842, 862 (W.D. Pa. Jan 30, 1973) (statute of limitations did not bar complaint under federal statute; the Court held that the cause of action did not accrue until plaintiff's cancellation of the franchise due to and as a "result of threats of Ford representatives made during the period March 1, 1964 to August 31, 1964"), *judgment vac. on appeal on diff. issue*,  *Rea v. Ford Motor Co.*, 497 F.2d 577 (3rd Cir. 1974) (with respect to whether a

manufacturer or its agent breached its duty of good faith "in applying this definition, it is necessary for the finder of fact to consider not only whether one party brought pressure to bear on the other, but for what reason it did so" in finding that the question "is a factual question the determination of which will depend on the circumstances arising in each particular case") (*citations omitted*); *Barney Motor Sales v. Cal Sales, Inc.,* 178 F.Supp. 172, 175 (D.C.Cal. 1959) (motion denied to permit plaintiff to introduce evidence to demonstrate defendant dominated by and acted for corporation regarding claim that decision not to renew franchise agreement made in bad faith).  Given that the proper application of the discovery rule primarily turns on questions of fact that will require the taking of depositions and discovery in this matter, a motion to dismiss on this basis is not the proper vehicle.

Grimes Buick's Complaint alleges a course of conduct by GMAC that essentially left Grimes Buick with no alternative but to sell the dealership. However, Grimes Buick did not realize GMAC and General Motors' unlawful strategy until it became clear to Grimes Buick that the purpose of GMAC's demands, such as reducing its floor plan financing under the agreement, and requiring Grimes Buick to deposit additional working capital, and GMAC's failure to honor their commitments were for the purpose of intimidating and punishing

Grimes Buick.  Instead, as a result of GMAC's misrepresentations, Grimes Buick initially believed that GMAC intended to continue to provide financing for them to stay in business in the event that they acceded to these demands.  Given that the proper application of the discovery rule primarily turns on questions of fact that will require the taking of depositions and discovery in this matter, a motion to dismiss on this basis is not the proper vehicle.

According to Grimes Buick's Complaint, during a conference call on April 16, 2009 between Grimes Buick and GMAC representatives, GMAC assured Grimes Buick that it was not "out of trust".  GMAC's representations in April 2009 that Grimes Buick was not "out of trust" resulted in Grimes Buick's false and mistaken belief that there were no violations accruing under the federal statute. Therefore, as of April 2009, the discovery of the violations alleged by Grimes Buick had not occurred.  See Plaintiff's Complaint, ¶ 37.

However, Grimes Buick eventually discovered that GMAC's course of conduct was part of an overall strategy and scheme to indirectly obviate the protections of the statute by means of forcing a construction termination rather than an actual termination of Grimes Buick's franchise.  Grimes Buick alleges that the bad faith conduct related to the GMAC floor plan restrictions imposed by GMAC during the Spring and Summer of 2009 ultimately caused it to suffer

substantial losses, and as a result, it was forced and coerced to sell its dealership in a distress sale at a price materially below the market value of such dealerships given its sale history.  See Plaintiff's Complaint, ¶ 39.  It was at the time of the distress sale of Grimes Buick's dealership that Grimes Buick finally realized and discovered the extent of GMAC's bad faith conduct, through the culmination of events including the discovery that GMAC had not imposed the same conditions and restrictions that it imposed on other dealerships that were, unlike Grimes Buick, "out of trust".  See Plaintiff's Complaint, ¶ 45.

Therefore, since this a motion to dismiss, and not summary judgment, and given that the allegations on the face of the Complaint show that the claims are not time barred by the statute of limitations, GMAC's motion should be denied.  See *Robinson v. Johnson* 313 F. 3d. 128, 135 (3rd Cir. 2002); *Cito v. Bridgewater TWP. Police Department* 892 F 2d. 23, 25 (3rd Cir. 1989).

## C.     Grimes Buick's  Tortious Interference Claim Does Not Fail

### 1.      The Claim Meets The Minimum Pleadings Standard

The Complaint alleges GMAC required Grimes Buick to provide it with a list of financial institutions with which Grimes Buick did business. See Plaintiff's Complaint, ¶ 80. Grimes Buick  alleges that GMAC used this list to contact the various financial institutions with which Grimes Buick did business and advised

them of Grimes Buick's financial difficulties.  Plaintiff's Compl. ¶¶ 80-84.Grimes

Buick's cause of action for tortuous interference is not solely confined to the

allegations in paragraphs 80-84 in its Complaint. Throughout the Complaint,

Grimes Buick alleges that GMAC  engaged in a pattern of conduct to destroy

Grimes Buick's  business by imposing restrictions and that as part of this pattern

GMAC ultimately  interfered with Grimes Buick's  contractual and business

relationships with other institutions.

In order to make out a claim for tortious interference with the contractual

relationship the complaint must allege: (1) that a contract was entered into, (2) that

its performance was refused, (3) that such refusal was induced by unlawful and

malicious acts of the defendant, and (4) that damages have resulted to the plaintiff.

*Phillips v. Montana Education Association* , 187 Mont. 419, 423, 610 P.2d 154,

157 (1980). As the allegations in Grimes Buick's Complaint are deemed true and

meet the *Phillips* requirements, GMAC's motion to dismiss must fail.

Grimes Buick also states a claim for intentional interference with either

"business relations" or "prospective economic advantage".

> The key difference between the two tort theories is that unlike interference
> with contractual relations, intentional interference with either "business
> relations" or "prospective economic advantage" does not require that a
> contract exist between any of the involved parties. Rather, the focus of the
> legal inquiry is on the intentional acts of the "malicious interloper" in
> disrupting a business relationship. See, e.g., Buckaloo v. Johnson (1975), 14

Cal.3d 815, 122 Cal.Rptr. 745, 537 P.2d 865, 869. Under this theory, "a person who is involved in an economic relationship with another, or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct which is intended to disrupt the relationship." Ellis v. City of Valdez (Alaska 1984), 686 P.2d 700, 707. Thus, it is useful to observe the language employed by other courts, that the plaintiff's "business" includes "reasonable expectation of entering into a valid business relationship." See, e.g., Cook v. Winfrey (7th Cir.1998), 141 F.3d 322, 327.

*Maloney v. Home & Inv. Ctr., Inc.,* 2000 MT 34, 298 Mont. 213, 225, 994

P.2d 1124, 1132 (2000)  GMAC's motion to dismiss must fail.

### 2.    Grimes Buick's Claims Against GMAC  For Tortious Interference Are Not Time Barred

The discovery and accrual rules discussed at pages 15-19 above, apply to the

tort of intentional interference with contract.  It was not until the September, 2009

closing that Grimes Buick discovered the facts constituting the claim of tortuous

interference. Grimes Buick's Complaint clearly states tortuous interference by

GMAC with the contractual and business relations Grimes Motors  had with banks,

lenders and credit unions as a culmination of GMAC's course of conduct with

Grimes Buick, and which later resulted in Grimes Buick's discovery in September

2009 that GMAC  had unlawfully tried to force a constructive termination of its

business.  See Plaintiff's Complaint, ¶¶ 80-84.

### 4.  GMAC's  Actions Support A Claim for Tortious Interference

Plaintiff's in opposition to a motion to dismiss, are not required to establish a prima facie case that Plaintiff can meet its burden of proof that all of the elements of the claim for tortious interference. These causes of action are primarily factual in nature and must be dispensed of during a trial following discovery when Grimes Buick  will have to come forward with evidence to meet its evidentiary burden. .  GMAC's  motion to dismiss on this cause of action is premature as the factual record has not been developed in this proceeding.  *See State Medical Oxygen & Supply, Inc., v. American Medical Oxygen Company,* 267 Mont. 340, 344-345, 883 P.2d 1241, 1243-1244 (1994).

In the event that the Court should decide that the allegations set forth in Grimes Buick' Complaint do not sufficiently plead a cause of action for tortious interference of contract and prospective contractual and business relations, Grimes Buick  respectfully request leave to amend the Complaint.  *See Walstadt v. Northwest Bank of Great Falls or Northwestern Bank of Great Falls,* 240 Mont. 322, 324, 783 P. 2d 1325, 1326 (1989).  *(*citations *omitted);* Local Rules of Procedure, United States District Court, District of Montana, Rule 15.1 and Montana Rules of Civil Procedure, Rule 15(a).  (amendment of pleadings allowed if amendments would further the ends of justice as denying leave to amend is the exception rather than the rule).  *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct.

27

1937, 1949, 173 L.Ed.2d 868 (2009); *Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003, 1006  (9th Cir.2010) (Circuit Court concluded that District Court abused its discretion by granting a Rule 12(b)(6) motion to dismiss while denying leave to amend a complaint); and *Alvarez v. Chevron Corp.,* 656 F.3d 925, 930–31 (9th Cir.2011) (quoting *Telesaurus* ).

Any amendment to Grimes Buick's Complaint to re-plead this cause of action, relates back to the filing of the  original Complaint against GMAC, and as GMAC  has already had adequate notice and have been sufficiently apprised of the claims asserted against them, and given the early stages of this proceeding, GMAC cannot argue that they will suffer any prejudice in preparing a reasonable and adequate defense.  *See Walstadt v. Norwest Bank of Great Falls or Northwestern Bank of Great Falls,* 240 Mont. at 325.  Leave to amend should only be denied if a Court determines that re-pleading the claims could not possibly cure a deficiency, or in the case where a party had several opportunities to amend and repeatedly failed to cure deficiencies in its pleading. *See Telesaurus,* 623 F.3d at 1003; *also see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

**D.**  **GMAC's Actions Amount To A Breach Of Contract.**

1.    **Grimes Buick Has Sufficiently Plead A Breach Of The Covenant of Good Faith And Fair Dealing As A Matter Of Law**

GMAC argues that it did not owe Grimes Buick an implied duty of good faith and fair dealing on the basis that the floor plan finance agreement provided for payment upon demand, and that a demand promise is not subject to the covenant of good faith under the UCC's official comments under UCC 1-208 and Montana Code 30-1-108, 208.  This ignores the longstanding Montana law that the covenant of good faith and fair dealing is present in every contract.  See MCA 28-1-211; *Knucklehead Land Company, Inc. v. Accutitle, Inc.,* 172 P. 3d 116, 340 Mont. 62 (2007); *Kennedy v. Dawson,* 296 Mont. 430, 989 P. 2d 390 (1999); *Story v. City of Bozeman*, 424 Mont. 436, 791 P2d 767 (1990).  In fact the only case law and statute cited by the Defendant in this proceeding relate to the enforcement of a demand instrument and not the causes of action alleged in Grimes Buick's Complaint. GMAC's attempts to recast Grimes Buick's cause of action as a demand promise related to the floor financing agreement, is misleading as this is not a case regarding the enforcement of a demand note.  *See Fulton National Bank v. Willis Denny Ford, Inc.,* 154 Ga. App. 846, 848, 269 SE. 2d 916, 918-919 (Court of Appeals, Ga. June 12, 1980) (sole issue of whether the decision by the holder of a demand instrument to demand payment must be made in good faith). Unlike the

parties in the *Fulton National Bank* proceeding, Grimes Buick's cause of action for breach of the implied covenant of good faith and fair dealing has nothing to do with whether or not GMAC acted in good faith with respect to the enforcement of a demand note.

Grimes Buick's  Complaint alleges that GMAC (now Ally) breached the implied covenant of good faith and fair dealing which is described as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade".  *See* Montana Code, Title 28, Chapter 1, Part 2, MCA 28-1-211.  Grimes Buick sets forth specific factual allegations in its Complaint that GMAC, by the bad faith actions mentioned hereinabove, breached both the common law and statutory duties of good faith and fair dealing implied covenants contained in the Loan Agreements. See Plaintiff's Complaint, ¶¶ 49-54.

GMAC is constrained by the covenant of good faith and fair dealing with respect to any change to the terms of the floor plan financing agreement, and the addition of any new terms that were not otherwise contemplated by the agreement. See *Kortum/Managhan v. Herbergers NBGL,* 349 Mont. 475, 481, 204 P. 3d 693, 698 (Sup. Ct. Mont. March 17, 2009).

GMAC's attempt to recast the issue in order to argue that its  ability to modify the agreement permits it  to impose the conditions that are the subject of

the Complaint, fails as it is misleading and Defendant's citations to authorities are inapplicable.  .  Plaintiff has sufficiently alleged a cause of action for the breach of the implied covenant of good faith and fair dealing as the subject matter of this proceeding and all of the allegations of the Complaint relate to whether GMAC dealt with Plaintiff in a commercially reasonable manner in imposing the restrictions that ultimately led to the demise of Plaintiff's business.  The issue of whether there was a breach of the implied covenant of good faith and fair dealing in this matter is a factual one, which cannot be dispensed with prematurely before the development of the factual record by both parties. *Phelps v. Frampton,* 339 Mont. 330, 343, 170 P. 3d 474, 483 (Sup. Ct. Mo. October 22, 2007).  Grimes Buick states a claim for the breach of the covenant of good faith and fair dealing, GMAC's motion should be denied.

### 2.        Grimes Buick Has Not Breached The Loan Agreement, and Grimes Buick  is not Precluded from Alleging A Cause of Action Against GMAC for Breach of Contract.

While Grimes Buick had one small part of a check returned insufficient funds, the Complaint alleges that those funds were repaid and that GMAC accepted that repayment.  Complaint ¶ 23.  GMAC by accepting this repayment waived any ability to now claim breach of contract.  *See, Elk Mountain Motor Sports, Inc. v. Montana Dept. of Labor & Indus., Uninsured Employers' Fund*, 2012 MT 261 ___,

31

P3d___ (2012) (Department of Labor liable for damages by reporting debt to third parties when it accepted past due payments of debt, and debt workout agreement was not in default, DOL waived breach of contract claim by accepting late payments). Under Rule 12(b)(6), to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.,* at 556, 127 S.Ct. 1955. All that is required of Plaintiff herein is to plead factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 1949–50 (2009); *See also, Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054–55 (9th Cir.2011).

### 3.   GMAC's Actions Are Actionable

GMAC argues that GMAC's  actions were authorized by the parties' floor plan financing agreement and its  financing function.  However, GMAC also concedes that resolution of this issue turns on the terms and conditions of the

parties financing agreements and other documents, the understanding of the parties, and on Montana law.

The Court is not deciding a motion on summary judgment, but rather a motion to dismiss. The United States Supreme Court with respect to the "plausibility standard" under Rule 12(b)(6), stated in pertinent part that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" such as to permit a Court to draw the reasonable inference that the defendant is liable for the misconduct alleged and does not contain a probability requirement. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955 (2007). Given that this proceeding has not even entered the discovery phase, Defendant's motion to dismiss must be denied as premature.

        S// Steve Blatt_____
        STEVE BLATT, ESQ., admitted Pro Hac Vice
        Bellavia Gentile & Associates, LLP.
        Attorneys for Plaintiff
        200 Old Country Road, Suite 400
        Mineola, New York 11501
        (516) 873-3000
        (516) 873-9032 Fax

<u>s/ Bruce M. Spencer</u>
BRUCE SPENCER, ESQ.
SMITH LAW FIRM, P.C.
 26 West Sixth Avenue
 P.O. Box 1691
Helena, MT 59624
(406) 442-2980
bspencer@smithlawmt.com

**PLAINTIFF'S CERTIFICATE OF COMPLIANCE UNDER THE LOCAL RULES OF PROCEDURE, UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA, RULE 7.1(d)(2)(A)-(E), WITH RESPECT TO ITS OPPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS REQUIRE DENIAL OF THE MOTION**

I hereby certify pursuant to the Local Rules of Procedure, United States District Court,

District of Montana, Rule 7.1(d)(2)(A)-(E) ("Montana District Local Rules") that I have

complied with the word count in accordance with the Montana District Local Rules related to

*Lengths of Briefs* which limits all response briefs to 6,500 words, and that the specific word

count of this brief is 6234, and that I have relied on the word count of the word processing

system used to prepare this brief in order to obtain said word count, as permitted under the

Montana District Local Rules. I also certify that since the word count of this brief exceeds 4,000,

I have included a Table of Contents, Table of Authorities and an Exhibit Index as directed under

the Montana District Local Rules.


Dated: Mineola, New York
      December 4, 2012

                                                <u>S/ Bruce M. Spencer</u>
                                                BRUCE SPENCER, ESQ.
                                                SMITH LAW FIRM, P.C.
                                                Attorneys at Law
                                                26 West Sixth Avenue
                                                P.O. Box 1691
                                                Helena, MT 59624
                                                (406) 442-2980

STEVE BLATT, ESQ., admitted Pro Hac Vice
Bellavia Gentile & Associates, LLP.
Attorneys for Plaintiff
200 Old Country Road, Suite 400
Mineola, New York 11501
(516) 873-3000
(516) 873-9032 Fax

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2012, a copy of the foregoing was served upon the following persons by the following means:

    1 , 2, 3, 4   CM/ECF

      U.S. Mail

1.     Clerk, U.S. District Court

2.     Ian McIntosh
       Kenneth Lay
       CROWLEY FLECK PLLP
       P.O. Box 10969
       Bozeman, MT 59719-0969

3.     John B. Sullivan
       Duane M. Geck
       Donald H. Cram
       SEVERSON & WERSON, P.C.
       One Embarcadero Center, Suite 2600
       San Francisco, CA 94111

4.     Steven H. Blatt
       BELLAVIA GENTILE & ASSOCIATES, LLP
       200 Old Country Road, Suite 400
       Mineola, NY 11501

               SMITH LAW FIRM, P.C.

          By:   s/ Bruce M. Spencer
              Bruce M. Spencer
              Attorney at Law