IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| GRIMES BUICK-GMC, INC., | CV 12-73-H-CCL |
| Plaintiff, | |
| -v- | |
| GMAC, LLC, F/K/A GENERAL MOTORS ACCEPTANCE CORPORATION, | ORDER |
| Defendant. | |

*******

Before the Court is a Motion to Dismiss (ECF No. 7) filed by Defendant GMAC, LLC ("GMAC"). The motion is opposed by Plaintiff Grimes Buick-GMC, Inc. ("Grimes"). This is a diversity jurisdiction case between citizens of two states, 28 U.S.C. § 1332(a), but besides asserting common law claims and a claim under the Montana Motor Vehicle Dealer Act, Mont. Code Ann. §§ 61-4-

101, *et seq.*, Plaintiff's complaint also asserts a claim arising under a law of the United States, 28 U.S.C. § 1331, the Federal Automobile Dealer's Day in Court Act ("FADDCA"), 15 U.S.C. § 1221.

**A. Legal Standard.**

The legal standard governing Plaintiff's complaint is provided by Federal Rule of Civil Procedure 8(a), which requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."

Under Federal Rule of Civil Procedure 12(b)(6), a court reviewing the pleaded facts on a motion to dismiss assumes that all the allegations in the complaint are true. *See Ashcroft v. Iqbal,* 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, factual allegations that consist of "threadbare

recitals of a cause of action's elements, supported by mere conclusory statements" need not be assumed to be true. *Id.* at 663. Factual allegations must sufficiently elevate the claim beyond the level of sheer speculation. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). The factual allegations must be sufficient to make the claim "plausible on its face." *Twombly*, 550 U.S. at 556-57. In addition, a court should construe the facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

A well-pleaded complaint may go forward even when "recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In determining whether a claim is plausible in the context of the complaint requires the court "to draw on its experience and common sense." *Iqbal*, 556 U.S. at 664.

Courts reviewing a motion to dismiss "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, when extra material is submitted as part of the complaint or relied upon in the complaint, a court may consider it. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  In addition, the reviewing court may take judicial notice of facts "not subject to reasonable dispute."  Fed. R. Evid. 201.  Applying this latter rule in reverse, a court may disregard allegations in a complaint that are contradicted by taking judicial notice of other facts.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal of a complaint with leave to amend should be granted even when leave to amend is not requested.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Only when a court is satisfied that no cure of deficiencies is possible should the court order dismissal without leave to amend.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B.  Plaintiff's Claims.**

Grimes alleges that it was engaged in the business of operating an automobile dealership selling General Motors automobiles as a franchisee under a Dealer Agreement.  In May, 2009, GMAC was allegedly "a wholly owned subsidiary of General Motors" or "was currently owned 49% by General Motors". (ECF No. 1, ¶ 11.)  GMAC acted as General Motors' automotive finance arm by providing most General Motors and its dealerships with "a broad range of financial products."  (ECF No. 1, ¶ 12.)  Grimes alleges that at all times pertinent to its Complaint, "GMAC was under the control, or was the actual or apparent agent of General Motors."  (ECF No. 1, ¶ 13.)  Grimes entered into a Loan Agreement with GMAC that gave Grimes a line of credit to finance new and used motor vehicles.

Grimes alleges GMAC acted wrongfully and in bad faith in Spring and Summer 2009, resulting in the constructive termination of Grimes' General Motors franchise.  According to Grimes, a series of events began in early April 2009, when, for the first time in 50 years, a Grimes check written to a lender or finance company was returned for insufficient funds.  (ECF No. 1, ¶¶ 21-22.)  The

5

check was written by Grimes to GMAC in the amount of $75,000. Grimes now claims that there was only a small insufficiency and that Grimes corrected it promptly so that a cleared payment was received by GMAC within 72 hours. (ECF No. 1, ¶ 23.) Grimes claims that GMAC's response to this insufficient funds check incident was to use it as a pretext to prevent Grimes from conducting its dealership business, forcing Grimes to sell the dealership in a distress sale. (ECF No. 1, ¶ 83.)

Grimes alleges that GMAC acted as the agent of General Motors in a scheme generally to reduce the General Motors dealer network and specifically to eliminate Grimes as a General Motors dealer. (ECF No. 1, ¶ 17.) Grimes makes the following additional factual allegations in support of its claims:

Claim 1. Breach of Contract. Grimes alleges that GMAC's conduct breached the Loan Agreement (ECF No. 1, ¶¶ 46-48). GMAC allegedly lowered the amount of financing available to Grimes and shortened the amount of time within which new and used cars had to be paid, reduced Grimes' ability to acquire vehicles through the GMAC auction, and refused to finance used vehicles without

6

an actual lien release (which could at times take one to three weeks to obtain).

Claim 2. Breach of Good Faith and Fair Dealing (MCA 28-1-211) (ECF No. 1, ¶¶ 49-55). In response to the insufficient funds check, GMAC required Grimes to pay off any other vehicles sold during that period, reduced the number of new and used vehicles that could be financed, required enhanced documentation for existing vehicles, reduced the release period on sold vehicles from three working days to the day of sale, rescinded Grimes' ability to use "Smart Cash" transactions and demanded that all sold units be paid by cashier's check, required that April interest be paid before the normal due date, increased Grimes' interest rate by nearly 70%, placed Grimes on suspension and eliminated Grimes' ability to order inventory, diverted dealership income from factory rebates and holdback accounts to the GMAC loan balance, required Grimes to establish a new checking account giving sole access to GMAC and requiring that all cash from vehicle sales be deposited in the new checking account, took physical possession of vehicle titles and keys (including vehicles that were not financed through GMAC), caused General Motors to put parts on COD, making customer repairs

more difficult, swept Grimes' checking account on a daily basis, implemented new financial requirements that reduced Grimes ability to make dealer trades, to sell new vehicles, and to accept trade-ins, required Grimes to pay $27,000 for GMAC employees ("keepers") placed at Grimes to control the dealership, charged Grimes for unnecessary audits, demanded control of Grimes' parts account, demanded $200,000 (then $100,000) in cashier's check for an offset account accessible only to GMAC, and required Grimes to provide a list of all financial institutions with which Grimes did business. Grimes alleges that all these activities were undertaken by GMAC for the purpose of stripping Grimes of cash to operate, which was a violation of the Loan Agreement's implied covenant of good faith and fair dealing.

     Claim 3. Violation of the Montana Motor Vehicle Dealer Act (ECF No. 1, ¶¶ 56-65). Grimes alleges that GMAC was acting as actual or apparent agent of General Motors, and thus was a "franchisor" within the meaning of the Montana Motor Vehicle Dealer Act, which protects motor vehicle franchisees in dealings with motor vehicle franchisors. The Dealer Agreement between Grimes and

General Motors was a franchise agreement.  Grimes alleges that GMAC acted wrongfully and in bad faith to change the terms of GMAC's Floor Plan with Grimes for the purpose of eliminating Grimes as a General Motors dealer.  Grimes asserts that this constructive termination of the dealership agreement violated the Montana Motor Vehicle Dealer Act, Mont. Code Ann. § 61-4-25.

Claim 4.  Violation of Montana Motor Vehicle Dealer Act, Mont. Code Ann. § 61-4-208(1)(c) (ECF No. 1, ¶¶ 66-71).  Grimes alleges that GMAC acted as an agent of General Motors for purposes of this Montana statute, and GMAC violated this statute by causing Grimes to suffer substantial losses and then forcing Grimes to sell the dealership in a distress sale at a below-market value price.  Grimes asserts that it is entitled to an amount equal to three times its pecuniary loss under the Montana Motor Vehicle Dealer Act.

Claim 5.  Violation of Federal Automobile Dealer's Day in Court Act (the "FADDCA") (15 U.S.C. § 1221 *et seq.*) (ECF No. 1, ¶¶ 72-78).  Grimes alleges that GMAC acted as the agent of a motor vehicle manufacturer for purposes of this federal statute, which requires such manufacturers "to act in good faith in

performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer. . . ." 15 U.S.C. § 1222.  Grimes asserts that it is an automobile dealer, that the Dealer Agreement was a franchise, and that GMAC's bad faith conduct and wrongful acts violated section 1221 of FADDCA.  That section defines "good faith" to be "fair and equitable" conduct between the parties to a franchise agreement, guaranteeing each party "freedom from coercion, intimidation, or threats of coercion or intimidation from the other party. . . ." 15 U.S.C. § 1221.

     Claim 6.  Tortious Interference With Contract and Prospective Contractual and Business Relations (ECF No. 1, ¶¶ 79-86).  Grimes alleges that after GMAC required it to provide a list of the financial institutions with which Grimes conducted its business, GMAC then contacted these financial institutions and informed them that Grimes was having financial difficulties.  Grimes further alleges that, as a result of GMAC's conduct, these financial institutions ceased to do business with Grimes, eventually "coerc[ing] Plaintiff to make a distress sale of its assets." (ECF No. 1. ¶ 83.)

10

Claim 7. Request for attorney's fees and costs pursuant to the Montana Motor Vehicle Dealer Act, Mont. Code Ann. § 61-4-210(3) (ECF No. 1, ¶¶ 87-91). Grimes alleges that it has and will incur attorneys' fees, costs, and expenses as a result of enforcing its rights under the Montana Motor Vehicle Dealer Act.

**C. Analysis.**

Defendant GMAC (which states that it is now known as Ally Financial, Inc. or "Ally") seeks dismissal of the Complaint on the grounds that (1) Plaintiff's September 2009 sale of its dealership moots its claims under the MMVDA and FADDCA (Claims 3-5), (2) neither the state nor federal dealer statute covers constructive termination claims, (3) Ally is not a franchisor, manufacturer, or agent of a franchisor or manufacturer, and (4) the FADDCA claim is time-barred.

1. Defendant GMAC cites *Shamrock Motors, Inc. v. Ford Motor Company*, 974 P.2d 1150 (Mont. 1999), and *Shamrock Motors Inc. v. Chrysler Corporation*, 974 P.2d 1154 (Mont. 1999), for the proposition that the sale of a dealership's franchise moots its petition for judicial review of an automobile manufacturer's

11

termination of its franchise agreement. In each case, Shamrock Motors was appealing from the final decision of the Motor Vehicle Division of the Montana Department of Justice, which in each case ruled that the automobile manufacturer had good cause to terminate the franchise agreement. The good cause for termination of the franchise agreement followed from the dealer's unauthorized sale of 80% of its stock without the manufacturer's knowledge or consent and in violation of the franchise agreement. In each *Shamrock* case, the dealer was seeking reinstatement of the franchise agreement and not damages. (A damages suit was filed separately against manufacturer Chrysler.)

     The *Shamrock* cases are not applicable to the facts alleged in the instant Complaint. This suit is the equivalent of the aforementioned damages suit against Chrysler by Shamrock Motors, Inc., and is not at all like either of Shamrock Motors' judicial petitions for review of termination.

     In this case, Plaintiff Grimes is not seeking reinstatement of its franchise agreement. Thus, the twin *Shamrock Motors* cases are distinguishable, and Plaintiff's claims against Defendant GMAC are not moot thereunder.

2. Defendant GMAC claims that constructive termination claims cannot be alleged pursuant to the MMVDA or the FADDCA. However, it has been held that a claim for constructive termination will lie under the FADDCA. *Imperial Motors Inc. v. Chrysler Corp.*, 559 F.Supp. 1312, 1315 (D. Mass. 1983). Also, in *American Motor Sales Corp. v. Semke*, 384 F.2d 192 (10th Cir. 1967), the allegation of constructive termination under FADDCA was based upon acts of the manufacturer amounting to coercion despite the appearance of a voluntary termination. Such claims are fact intensive because they must focus on the motivations and intentions of the manufacturer to intimidate, threaten, or coerce a dealer in violation of FADDCA. At least one federal district court has opined that the FADDCA "is not as concerned with what the parties did as it is concerned with why they did it." *Imperial Motors, Inc.*, 559 F.Supp. at 1314 (*quoting York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.*, 447 F.2d 786, 791-92 (5th Cir. 1971)). If the requisite evidence can be marshaled to support such a claim of constructive termination, the factual inquiry should be decided by a jury. *Imperial Motors, Inc.*, 559 F.Supp. at 1315-16 (quoting *Poller v. Columbia Broadcasting*

13

*System*, 368 U.S. 464, 468, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

As to the Montana dealer law, there is scant case law addressing the MMVDA, and no case on point to support or negate Defendant's argument that constructive termination will not lie under the MMVDA. The MMVDA states that "a franchisor may not cancel, terminate or refuse to continue a franchise unless the franchisor has cause for termination or noncontinuance." Mont. Code Ann. § 61-4-205. Constructive termination claims might, perhaps, be viewed merely as one type of proof of termination or refusal to continue a franchise. Because it appears that one of the purposes of the MMVDA is to protect the dealer in a circumstance where the manufacturer might be viewed as taking an unfair advantage of its economic leverage, it seems reasonable to believe that the legislature intended that MMVDA dealer protections would extend to indirect terminations. *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1181-83 (2nd Cir. 1995) (deciding that franchise need not be completely ruined but must be greatly reduced in value to evidence constructive termination of franchise). Defendant's citation to authority for this second point is not persuasive, and the Court is not willing to dismiss Plaintiff's

14

Complaint on a factually barren record.

3. As to the argument that GMAC did not act as an agent of manufacturer GM, this argument is entirely fact-dependent, and therefore a dismissal on this ground prior to discovery would be inappropriate.

4. Finally, GMAC's argument that the FADDCA claim is barred by the statute of limitations is also fact-dependent, and dismissal prior to discovery would be premature. Plaintiff alleges that although it knew of many of the new rules and requirements being imposed by GMAC in April 2009, it did not know the full motivation and intentions of GM until later, as new information became available to it. Plaintiff filed its Complaint on August 15, 2012. GMAC argues that the three-year statute of limitations began to run in April, 2009. However, Plaintiff claims that it did not discover facts until September 2009 from which Plaintiff could infer that GMAC was forcing a constructive termination. (ECF No. 1, §§ 80-84.) Again, dismissal based on a statute of limitations defense would be premature prior to full discovery where the Plaintiff alleges that it did not discover the facts constituting the claim until September 2009. *See* Mont. Code Ann. § 27-

15

2-102(3).  Plaintiff does not claim that its knowledge of the facts arrived at the date of sale; instead, Plaintiff claims that it did not realize that it was being forced out of business in April 2009, and its discovery of facts leading to that conclusion occurred at or about the time of the sale in September 2009.  (ECF No. 22 at 24 ("It was at the time of the distress sale . . . that Grimes Buick finally realized and discovered . . . that GMAC had not imposed the same conditions and restrictions . . . on other dealerships that were . . . "out of trust." See Plaintiff's Complaint, ¶ 45.).)

Defendant GMAC asserts that Plaintiff Grimes defaulted on a required payment (the $75,000 insufficient-funds check), putting Grimes into a "sales-out-of-trust" or "SOT" condition.  (ECF No. 8 at 4.)  Defendant argues that it was entirely justified in taking action to protect its collateral and the Court need only examine the parties written agreements (ECF No. 9-1 through 9-7) to conclude that Defendant was entitled to act as it did.  GMAC may ultimately prove to be correct in its assertion that it did not breach its contracts with Grimes, but at this point, there appears to be at least a "remote possibility" that Grimes could recover

16

on its breach of contract claims because it has pleaded a cognizable legal theory and sufficient facts to support a cognizable legal theory.

GMAC makes several other miscellaneous arguments, such as that the tortious interference claim is not sufficiently pled with factual detail and is also timed-barred. The Court disagrees with these arguments. In addition, Grimes' claim that GMAC caused certain banks to refuse to do business with Grimes sufficiently asserts factual allegations to support a cognizable claim. *Twombley* does not require more. As to all these claims there are discoverable issues of fact that preclude dismissal on a statute of limitations ground, at least at this point in the proceedings.

**D.  Conclusion.**

Having considered the parties' arguments, the Court's opinion is that dismissal of the Complaint is not appropriate because all of the claims are fact-dependent. The Court is not prepared to dismiss Plaintiff's claims at the pleadings stage. Accepting as true all of the factual allegations contained in the Complaint,

the Court finds that Plaintiff states plausible claims for relief against Defendant GMAC. Accordingly, Plaintiffs may proceed in their case. The Complaint should go forward, and GMAC should answer the Complaint.

Accordingly,

IT IS HEREBY ORDERED that Defendant GMAC's Motion to Dismiss the Complaint (ECF No. 7) is DENIED.

IT IS FURTHER ORDERED that Defendant GMAC's unopposed Motion for Judicial Notice of Secretary of State's Certificate of Fact (ECF No. 10 and 10-1) is GRANTED.

Done and Dated this 23rd day of September, 2013.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE